UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SOVEREIGN O'DELL,

                    Plaintiff.


v.                                          Case No.

                                            Hon.

HOPE NETWORK WEST
MICHIGAN/MICHIGAN
EDUCATION CORP, and
CHESTER SPELLMAN,
DIRECTOR of Corporation for National
And Community Service/AmeriCorps,
                    Defendants.


_____

JEFFREY S. BURG (P38381)
Attorney for Plaintiff
30700 Telegraph Road, Ste. 1675
Bingham Farms, MI   48025
(248) 227-5027
248-856-1258 fax
jburg@comcast.net
_____


**COMPLAINT and JURY DEMAND**

For her complaint, Plaintiff states:

## Jurisdiction and Parties

1.  This is an employment discrimination case, brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e et seq and 42 USC 2000e(5)(E)(3) (Title VII); Title I of the Americans with Disabilities Act ("ADA"), 42 USC § 12117; the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1201 et seq.

2.  This Court has original jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. §§1331 and 1343(a)(4).

3.  This Court may also exercise pendant jurisdiction over Plaintiff's state law claims arising under the statutes of the State of Michigan, and which arise from a common nucleus of operative fact pursuant to 28 USC 1367.

4.  Venue is proper in this District pursuant to 28 U.S.C. §1391(c) and 42 U.S.C. §2000-5(f)(3), as the place where the events giving rise to this cause of action occurred.

5.  Defendant HOPE NETWORK WEST MICHIGAN/MICHIGAN EDUCATION CORP ("Defendant Hope Network") is a nonprofit organization organized under the laws of the State of Michigan and subject

to personal jurisdiction in this District in that it maintained facilities and business operations in this District, employed Plaintiff and other members of her protected class in this District, and committed all of the discriminatory acts alleged herein in this District.

6. Defendant CHESTER SPELLMAN ("Spellman") is the director of Corporation for National and Community Service, whose program is "AmeriCorps," a nonprofit program employing persons in public service and community activities across the nation.

7. Defendant Spellman is subject to personal jurisdiction in this District in that his agency, AmeriCorps, maintained facilities and business operations in this District, employed Plaintiff and other members of her protected classes in this District, and committed all of the discriminatory acts alleged herein in this District.

8. Plaintiff is a resident of, and has domicile in, Genesee County, State of Michigan, within this judicial district.

**Background Facts**

9. Plaintiff realleges all paragraphs above as though fully set forth herein.

10. Plaintiff is multi-racial, including African-American, and is tan/brown in color.

11.    At all relevant times, Plaintiff was an individual with a disability within the meaning of §3(2) of the ADA, 42 USC 12102(2). Specifically, Plaintiff has a physical and/or mental impairment that substantially limits one or more of her major life activities, has a record of the impairment, and was regarded by Defendants as having the impairment.

12.    Plaintiff is a qualified individual with a disability as that term is defined in the ADA. 42 USC 12111(8). Plaintiff's disability includes post-traumatic stress syndrome and anxiety disorder.

13.    Plaintiff is an individual who, with reasonable accommodation, could perform the essential functions of her job as a tutor at Defendants' assigned school facility, Potter Elementary School in Flint, Michigan.

14.    Defendant Hope Network is a private, non-profit organization which operates under numerous assumed names, including Michigan Education Corps.

15.    Defendant Hope Network is not a governmental agency and does not perform any governmental function but does receive funding through grants from various governmental agencies, including state and federal.

16.    Defendant Hope Network applied for and was awarded grant funding from Defendant Spellman's agency, AmeriCorps, to pay for implementation of

the Minnesota Reading Corps program in Michigan schools through recruitment, training, and management of AmeriCorps members.

17. The AmeriCorps members were to be placed in direct service to address unmet community needs in education but were expressly prohibited through policy and statute from supplanting (replacing) employees, volunteers, and core curriculum, and prohibited from performing inherently governmental functions.

18. To participate in the grant-funded program, all members (Plaintiff and Bridget DePottey), volunteers (Holly Selesky), the grantee (Defendant Hope Network), and sub-grantee (Flint Community School District) must have agreed to follow all AmeriCorps policy and procedure, including: the prohibition of discrimination, the three-step disciplinary policy, and the suspension policy whether or not at the worksite (Potter Elementary).

19. Defendant Hope Network advertised K-3 tutor positions on Indeed.com for the 2016-2017 and 2017-2018 school years in Flint Community School District (FCSD).

20. Plaintiff responded to the advertisement for the 2016-2017 school year and was required to attend an observation of the position prior to being invited to interview for the position and attended such observation with another

minority-race female, who stated she also was required to attend the observation.

21. Bridget DePottey (DePottey) is a non-minority, non-veteran, non-impaired, but otherwise similarly situated tutor also assigned to Potter Elementary and was not required to attend an observation of the position prior to being invited to interview for the position.

22. Plaintiff also responded to the advertisement for the 2017-2018 school year but received no contact from Defendant Hope Network because Plaintiff's 2016-2017 contract was suspended "at the explicit request of Holly Selesky ("Selesky").

23. Plaintiff was offered by and accepted from Thomas Bobo ("Bobo"), on behalf of Defendant Hope Network a contract to serve as an AmeriCorps member in the capacity of K-3 Literacy Tutor with performance dates extending continuously from August 22, 2016 through June 15, 2017.

24. For the 2016-2017 school year, Plaintiff was assigned to Potter Elementary, where Selesky had entered into a verbal agreement the previous school year (2015-2016) to serve as an AmeriCorps volunteer in the capacity of Internal Coach to the K-3 AmeriCorps member tutors, and had agreed to continue service in the same capacity for the 2016-2017 school year, which would be her final year, due to the AmeriCorps time

restriction policy of two years maximum with one organization and four years lifetime maximum with AmeriCorps.

25.  Selesky, in the time-period relevant to this complaint, was directly under the supervision and control of Defendant Hope Network's employees Jennifer Thomas, Master Coach; Renee Borg, Program Director; Thomas Bobo, Program Director; Holly Windram, Executive Director; and Karen Renkema, Owner/Partner.

26.  Selesky's job duties as Internal Coach were exclusively governed by Defendant Hope Network's policies and procedures as delineated from official AmeriCorps policy, which is based on federal statute, and is located on pages 21-34 of Defendant Hope Network's "2016-2017 Program Policies, Procedures, and Service Requirements."

27.  Defendant Hope Network's policies and procedures as to Selesky's duties and responsibilities provide a limited number of duties to Selesky for subjective matters, such as evaluating Plaintiff's performance during integrity checks.

28.  Selesky performed her subjective duties to the detriment of Plaintiff by and through deducting performance points for non-existent shortcomings, which were not observed by any other fidelity/integrity evaluator– among other things. When pointed out by the Master Coach that she had not

7

observed this alleged shortcoming, Selesky responded that it "was [her] opinion" of Plaintiff's performance.

29.   Selesky performed her discretionary duties to the benefit of DePotty,  the non-minority, non-veteran, non-impaired, but otherwise similarly situated tutor by and through, among other things, failing to deduct for material deficiencies in execution of the essential functions of the position. When pointed out by the Master Coach that she had observed deficiencies and advise on how to correct the deficiencies, Selesky responded that "[she] missed that [and] didn't mark that down."

30.   The results of the fidelity/integrity checks were scored and placed in the personnel file and Plaintiff's success rate was negatively impacted by Selesky defamatory representations regarding Plaintiff's performance, resulting in a lower performance rating than DePottey, whose work was inferior to Plaintiff's and whose students consistently demonstrated this inferiority by lower improvement test scores.

31.   The bulk of Defendant Hope Network's policies and procedures as to Selesky's duties and responsibilities are ministerial, entirely depriving Selesky of options, discretion, and thought; including actual performance of independent fidelity/integrity checks, following the step-discipline policy and procedure, following the suspension policy and procedure,

complying with anti-discrimination statutes, timely approval of timesheets, and creating weekly schedules, among other things.

32. Selesky performed her ministerial duties to the benefit of DePottey, the non-minority, non-veteran, non-impaired tutor, by conducting independent fidelity/integrity checks, timely approval of timesheets, creating weekly schedules, following the step-discipline policy and procedure, and complying with anti-discrimination statutes, among other things.

33. Selesky failed to perform her ministerial duties for Plaintiff from Mid-September through November 2016 by failing to perform independent fidelity/integrity checks, failure to approve timesheets for timely payment, failure to create weekly schedules, and failure to comply with anti-discrimination statutes.

34. Between September 2016 and November 2016, Selesky made derogatory comments about African American students regarding their cultural norms, intelligence, manners, and self-control capabilities – including stating to Plaintiff as to the noise level of Title I students that "they can't help it" which was followed by "it's how they are" with significant emphasis on the word "they".

35. Subsequently, Selesky was seen eavesdropping on Plaintiff's conversation with one of Plaintiff's African American tutor students who had asked

what race Plaintiff is; to which Plaintiff responded that she is the same as him and everyone else due to Plaintiff's mixed ethnicity and race.

36. Following this private disclosure, Selesky displayed open hostility toward Plaintiff, including being seen in Plaintiff's workspace going through Plaintiff's private and personal belongings; staring and glaring at Plaintiff until a partition wall was positioned to block her view; failing to respond to Plaintiff's requests, including requests for assistance in providing strategies for more successful sessions with Kindergarten students (which was one of Selesky's ministerial duties)—among other things.

37. Further, Selesky began to create a hostile work environment by, among other things:

a. Selesky verbally nitpicked Plaintiff's personal workstyle preferences – including inundating Plaintiff with comparisons to how, and stating Plaintiff should, emulate the previous tutors' (Tye and Chester) preferences;

b. Selesky verbally complained that Plaintiff intended to continue using the Great Leaps program, as directed by the Master Coach, per the chosen direction of the Reading Corps program – which Selesky had no control over. Selesky repeatedly told Plaintiff that if Tye and Chester could not get their students to successfully use Great Leaps, Plaintiff would not.

But, Plaintiff was successfully implementing Great Leaps, per the instructions of Defendant Hope Network and Selesky had no input or authority to decide whether Great Leaps would be used, but inundated Plaintiff every day with complaints that Plaintiff was using Great Leaps as directed;

c.     Selesky verbally complained about Plaintiff using the printer (which per AmeriCorps policy was supposed to be provided for Plaintiff's use) and loudly yelled out "who printed this? who printed this?" with an angry tone and demeanor while never doing the same to DePottey, who used it for everything while Plaintiff was forced to print from home to avoid Selesky's targeted humiliation;

d.     Selesky verbally complained about Plaintiff making a decoration which incorporated a handmade ornament from each tutored student and putting up inspirational images to lift their spirits;

e.     Selesky verbally complained that Plaintiff used a lockbox to store her workproduct files;

f.     Selesky verbally complained that Plaintiff used a locked footlocker to store rewards for the students and complained about the rewards;

g.     Selesky began standing directly in the middle of the room between her and Plaintiff's workspace to hold long, loud conversations with various people, including Karen Christian and Rick Lnu, rather than taking them into her workspace – while staring at Plaintiff, to deliberately disrupt the tutoring session which Plaintiff was having, especially if the student was benchmarking (being tested for overall progress charting).

h.     Selesky began reading very loudly and encouraging her Title I students to be loud and disrupting to Plaintiff's tutoring sessions whenever DePottey did not have a student at that time (due to absence, typically).

i.     Selesky began to routinely hunt Plaintiff down. Because Plaintiff's tutor sessions were being impeded by Selesky's actions, Plaintiff began holding the sessions in the hallway, in the library, or in an adjoining room – which had a door that could be closed for quiet and was used by staff for meetings: anyplace that was quiet, since Plaintiff's students were complaining about the noise level Selesky was causing. In response, Selesky routinely charged down the hall and into wherever Plaintiff was located in a hostile, aggressive, confrontational manner. Upon locating Plaintiff and discovering that Plaintiff was performing the essential functions of the position - as set forth in the terms of Plaintiff's

contract, Selesky would stand there and glare at Plaintiff for several minutes, say nothing, turn and walk away;

j.      Selesky then directed DePottey to attempt to block Plaintiff's use of the adjoining room by getting there first, so Plaintiff would be required to seek another tutoring location.

k.      Selesky began complaining that Plaintiff did not sign in and out daily, but did so at the end of the week, since hours were kept in the computer of the Defendant Hope Network and logged into the AmeriCorps system daily;

l.      Selesky stopped giving Plaintiff necessary information for Plaintiff to perform the essential functions of the position, including updating schedules to know which room students were in – resulting in perpetual Easter Egg- Style searches for students, resulting in diminished actual hours spent tutoring, in order to cause Plaintiff to not provide the minimum required hours per student per week.

m.      Selesky stopped speaking to Plaintiff entirely, unless DePottey was present and then DePottey was directed to provide support to Selesky's hostile conduct by turning around and watching to increase the likelihood of humiliation placed on Plaintiff.

n.     Selesky began requiring Plaintiff to obtain information from DePottey, who is not a supervisor.

o.     Selesky began verbally reprimanding Plaintiff for lawful activities, including: attending AmeriCorps trainings (which were also attended by DePottey), attending MDHHS food stamp hearings, and dropping off papers at the Probate Court.

p.     Selesky made a huge show of looking at her watch or turning and cocking her head backwards to observe a clock whenever Plaintiff would leave or return to the work-area, whether to pick up or drop off a student; for lunch; or to use the restroom. And, Selesky directed the teachers whose students were tutored by Plaintiff to do the same – thus, whenever Plaintiff moved, Potter Elementary staff took great effort to ensure Plaintiff was aware they were clocking her and reporting back to Selesky. Plaintiff, observing that Selesky's behavior appeared to be escalating, submitted a formal inquiry to Thomas Bobo on November 2, 2016, who took no action.

38.    At no time did Selesky make any overt gestures which indicated she had a problem with DePottey's personal workstyle preferences, use of Great Leaps, use of the printer, use of decorations, or rewards.

39.    At no time did Selesky make any overt gestures to interfere with, impede, or disrupt DePottey's tutoring sessions, and often came over to observe

DePottey's tutoring sessions and offer advice. Selesky also praised and rewarded DePottey's student – which, when asked why it never happened for them, Plaintiff honestly informed her students that they were being punished because Selesky did not like Plaintiff, although Plaintiff had not done anything to deserve Selesky's ire.

40. At no time did Selesky perform the ministerial duty of informing Plaintiff that she had a problem with Plaintiff's performance, which is the first step in the Disciplinary Process.

41. Thus, between September and November 2016, Selesky engaged in conduct which was prohibited by AmeriCorps policy, Defendant Hope Network's policy, and federal law (which governs the AmeriCorps volunteers and members).

42. Plaintiff's contract provides only for just-cause termination, demonstrated by the set term and the discipline and suspension policies.

43. The discipline policy takes place in three steps.

44. The suspension policy becomes triggered as part of the discipline policy, but may be immediately implemented for criminal actions, whether or not arrested, formally charged, or convicted.

45. Based upon the bad-faith, malicious, defamatory statements of Selesky, Plaintiff was immediately suspended.

46. Selesky (a) alleged that Plaintiff wrote a letter to her which attacked her, and (b) demanded that Plaintiff be immediately removed from Potter Elementary – because Plaintiff identified as having PTSD.

47. The letter states (1) Plaintiff has emotional/mental impairments which are sheltered by various laws, including the ADA; (2) Selesky's conduct – including conspicuous attempts to humiliate Plaintiff are triggering the impairments; (3) thus, Plaintiff requires reasonable accommodations to perform the essential functions of the position; (4) This is protected health information which may not be disclosed to non-essential individuals, so please retain the disclosure of impairments in confidentiality; and (5) Plaintiff looks forward to moving forward as a team with Selesky.

48. In response, Selesky quickly wrote five emails, each progressively distorted in the facts recited, each revealing animosity toward Plaintiff rooted in dislike of Plaintiff's workstyle (Selesky's cited complaint: Plaintiff emails instead of finding me; Plaintiff emails her timecard on Saturday, but it's due on Monday; Plaintiff discontinued a violent student who I thought needed more time to adjust; Plaintiff locks her files in a box instead of giving them to me; Plaintiff cannot explicitly tell me how many minutes a MDHHS hearing will take; Plaintiff was 5 minutes late to training in Grand Blanc, MI even though Plaintiff did not have a car;

Plaintiff left for an hour and 45 minutes to attend AmeriCorps training - among other clearly ridiculous complaints.)

49.   In the emails, Selesky disclosed (1) that Plaintiff has PTSD; (2) that Selesky is "concerned" because of this; and (3) that Selesky believes Plaintiff "attacked" her throughout the letter, but later could not explain how); and (4) that Selesky is concerned for what Plaintiff will do.

50.   In doing so, Selesky immediately violated the protection and disclosure provisions of the ADA by disclosing and sharing the physical letter/email and/or its contents with non-essential individuals.

51.   In doing so, Selesky immediately violated AmeriCorps policy of and concerning protection and disclosure provision which is codified as the Privacy Act (5 USC 552a) by disclosing and sharing the physical letter/email and/or its contents with non-essential individuals.

52.   In doing so, Selesky immediately defamed Plaintiff through slander and libel, cast Plaintiff into a false light and caused Flint Community Schools, Defendant Hope Network, AmeriCorps and the teachers at Potter Elementary to regard Plaintiff in a negative way and decline to do business with Plaintiff by disclosing and sharing the physical letter/email and/or its contents.

53.     Selesky went on to defame Plaintiff by intruding into Plaintiff's seclusion herself and through DePottey – actions documented by Selesky in email communications between herself and Bobo, Renkema, Borg, and Windram by eavesdropping on Plaintiff's phone calls and dispersing misinformation based allegedly to have been derived from such private communications, including: (a) representing that Plaintiff was suing an employer and lied when Plaintiff asserted she was attending a MDHHS hearing (b) representing that Plaintiff failed to give notice of anticipated tardiness (Plaintiff was late twice) or absence, although this information was emailed directly to Selesky; (c) representing that Plaintiff was absent without notice or cause, although Plaintiff was at a prescheduled AmeriCorps training session; (d) representing that Plaintiff was "setting them up" to be sued; and (e) representing that Plaintiff "wants to be a lawyer and operates in that way," which is false.

54.     On November 3, 2016 Plaintiff reported to management of Defendant Hope Network that Selesky was creating a hostile work environment, and asked for accommodations which would resolve the hostile environment so that Plaintiff could perform the essential functions of the position.

55.     On November 4, 2016 Selesky emailed the same member of management and demanded that Plaintiff's contract at Potter Elementary be terminated.

56.     On November 4, 2016 Plaintiff's contract at Potter Elementary was in fact

        terminated.

57.     On November 4, 2016, Selesky made material representations about

        Plaintiff which precluded Plaintiff from being able to continue

        performance of the contract at any school within the Flint Community

        School District (FCSD), Genesee County, surrounding counties, or in any

        other AmeriCorps program. Plaintiff expected that she would be placed in

        another FCSD school based upon representations of multiple openings

        throughout FCSD from the Master Coach. However, due to the

        representations made by Selesky, plaintiff was barred from being placed

        into any these positions. Positions were posted as available from

        November 26, 2016 to the end of the school year in June, 2017.

58.     On May 24, 2019 Plaintiff was informed that she was not selected for the

        position of K-3 Elementary Literacy Tutor due to an email she allegedly

        sent on January 10, 2017.

## Count I –  Violation of Title VII, Race and Color Discrimination

59.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

60.     At all material times, Plaintiff was an employee for purposes of Title VII, and Defendants were her employer for purposes of Title VII, covered by and within the meaning of Title VII, 42 USC 2000e-2(a)(1).

61.    Plaintiff's race and color were at least one factor that made a difference in Defendants' decision to suspend and terminate Plaintiff in November, 2016, and to deny Plaintiff a position in 2019.

62.    In denying Plaintiff her current job and a prospective job, while providing the same to persons not in Plaintiff's protected classes, Defendants treated Plaintiff differently based on her race and color.

63.    Had Plaintiff been a person of different race or color she would not have been denied her job and a prospective job.

64.    Defendants, through their agents, representatives, and employees, were predisposed to discriminate on the basis of race and color, and acted in accordance with that predisposition in denying Plaintiff her job and a prospective job.

65.    The actions of Defendants were intentional, willful, malicious, wanton, and in reckless disregard for Plaintiff's rights and sensibilities.

66.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, economic and noneconomic damages, humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

### COUNT II- Violation of the ADA

67.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

68.   At all relevant times, Plaintiff was an individual with a disability within the meaning of §3(2) of the ADA, 42 USC 12102(2). Specifically, Plaintiff has a physical impairment that substantially limits one or more of her major life activities, has a record of the impairment, and is regarded by Defendants as having the impairment.

69.   Plaintiff is a qualified individual with a disability as that term is defined in the ADA. 42 USC 12111(8).

70.   Plaintiff is an individual who, with reasonable accommodation, can perform the essential functions of her job as a tutor at Defendants' Flint school.

71.   In rejection of Plaintiff's request for accommodation, Defendants refused to address the behaviors of Selesky and to place Plaintiff in a position that was open at the time of her request.

72.    Defendants' failure to make reasonable accommodations for Plaintiff constitutes discrimination against Plaintiff in respect to the terms, conditions, or privileges of employment. This conduct constitutes a violation of the ADA. 42 USC 12112(b)(5)(A).

73.    Defendants failed to undertake any good-faith efforts, in consultation with Plaintiff, to identify and make a reasonable accommodation for Plaintiff.

74.    Defendants conducted themselves with malice or with reckless indifference to Plaintiff's federally protected rights.

75.    As a direct and proximate result of Defendants' discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities.

76.    In addition, Defendants' failure to make reasonable accommodation to Plaintiff has caused or continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT III-  Violation of the ELCRA, Hostile Work Environment And Discharge

77.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

78.    At all material times, Plaintiff was, for purposes of the ELCRA, an

employee, and Defendants were her employer, covered by and within the

meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

79.    Defendants permitted Selesky to harass Plaintiff and created a hostile

work environment for Plaintiff based on her race and color.

80.    Plaintiff's race and color were at least one factor that made a difference

in Defendants' decision to harass Plaintiff and to create a hostile work

environment for Plaintiff.

81.    Had Plaintiff been a person of different race and color she would not

have been harassed.

82.    Defendants, through their agents, representatives, and employees, were

predisposed to discriminate on the basis of race and color and acted in

accordance with that predisposition in harassing Plaintiff.

83.    The actions of Defendants were intentional, willful, malicious, wanton,

and in reckless disregard for Plaintiff's rights and sensibilities.

84.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff

has sustained injuries and damages including, but not limited to, loss of

earnings and earning capacity; loss of career opportunities; humiliation

and embarrassment; mental and emotional distress; and loss of the

ordinary pleasures of everyday life, including the right to pursue gainful

occupation of choice.

## COUNT IV- Violation of the Michigan PWDCRA

85.   Plaintiff repeats and realleges the preceding paragraphs as though fully

stated herein.

86.   At all relevant times, Plaintiff was a qualified individual with a disability

within the meaning of MCL 37.1103 et seq. Specifically, Plaintiff has a

physical impairment that substantially limits one or more of her major

life activities, has a record of the impairment, and/or is regarded by

Defendants as having the impairment. Plaintiff is an individual who, with

or without reasonable accommodation, can perform the essential

functions of her job as a tutor at Defendants' Flint school facility.

87.   In rejection of Plaintiff's written request for accommodation, even though

Defendants had available methods of accommodation which were not

burdensome to Defendants in any manner, Defendants refused to

accommodate Plaintiff's written request for accommodation.

88.   Defendant's failure to make reasonable accommodations for Plaintiff,

constitutes discrimination against Plaintiff in respect to the terms,

conditions, or privileges of employment in violation of the PWDCRA.

89.   Defendants conducted themselves with malice and/or with reckless indifference to Plaintiff's protected rights.

90.   As a direct and proximate result of Defendants' discrimination on the basis of Plaintiff's disability or perceived disability, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities.

91.   In addition, Defendants' failure to make reasonable accommodation to Plaintiff has caused or continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental, emotional and physical pain and anguish, loss of enjoyment of life, and other nonpecuniary losses.

**COUNT V-Retaliation For Opposing Violations Of Title VII**

92.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

93.   Plaintiff opposed violations of her rights under Title VII, which opposition constituted activity protected under Title VII.

94.   Defendants retaliated against Plaintiff for opposing violations of Title VII, by harassing and discharging Plaintiff's employment and by failing to give Plaintiff a position in 2019.

95.   As direct and proximate result of Defendants' unlawful retaliatory actions against Plaintiff as described, Plaintiff has suffered injuries and damages,

including, but not limited to, loss of earnings and potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## Count VI: Retaliation For Opposing Violations Of ELCRA

96.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

97.    Plaintiff opposed violations of her rights under ELCRA, which opposition constituted activity protected under ELCRA.

98.    Defendant retaliated against Plaintiff for opposing violations of ELCRA, by harassing and discharging Plaintiff's employment and by failing to give Plaintiff a position in 2019.

99.    As direct and proximate result of Defendants' unlawful retaliatory actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, loss of earnings and potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## Count VII: Retaliation For Opposing Violations Of ADA

100.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

101.   Plaintiff opposed violations of her rights under ADA, which opposition constituted activity protected under ADA.

102.   Defendant retaliated against Plaintiff for opposing violations of ADA, by harassing Plaintiff and discharging Plaintiff's employment and by failing to give Plaintiff a position in 2019.

103.   As direct and proximate result of Defendants' unlawful retaliatory actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, loss of earnings and potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

### Damages

PLAINTIFF REQUESTS that this court enter judgment against Defendant as follows:

1.   Legal relief

    a.   a judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

    b.  compensatory damages in whatever amount she is found to be entitled;

    c.  punitive and exemplary damages commensurate with the wrong and Defendants' ability to pay;

    d.  liquidated damages;

    e.  an award of interest, costs, and reasonable attorney fees.

2.    Equitable relief

    a.  an order reinstating Plaintiff to the position she would have held if there had been no harassment and other discrimination and retaliation by Defendants;

    b.  an injunction prohibiting any further acts of retaliation or harassment or other discrimination;

    c.  an award of interest, costs, and reasonable attorney fees;

    d.  whatever other equitable relief appears appropriate at the time of trial.

Respectfully submitted,

/s/ Jeffrey S. Burg

Jeffrey S. Burg

Dated:  May 12, 2020          Attorney for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury of all appropriate claims as asserted in this Complaint.

Respectfully submitted,

/s/ Jeffrey S. Burg

Jeffrey S. Burg
Attorney for Plaintiff

Dated: May 12, 2020