UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOVEREIGN O'DELL,

      Plaintiff,                     Case No. 20-11192

v.                                   Paul D. Borman
                                   United States District Judge
HOPE NETWORK WEST
MICHIGAN/MICHIGAN EDUCATION
CORPS and CHESTER SPELLMAN,
Director of Corporation for National
and Community Service/AmeriCorps.,

      Defendants.
_____/

### OPINION AND ORDER GRANTING DEFENDANT CHESTER SPELLMAN, DIRECTOR OF THE CORPORATION FOR NATIONAL AND COMMUNITY SERVICE AMERICORPS STATE AND NATIONAL PROGRAM'S, MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF NO. 17)

This is an employment discrimination case arising out of Plaintiff Sovereign

O'Dell's service as a literacy tutor with Hope Network's Michigan Education Corps

in the Flint Community Schools during the 2016-2017 school year. Plaintiff asserts

federal and state law discrimination claims against two defendants: Hope Network

West Michigan/Michigan Education Corps, and Chester Spellman, Director of

Corporation for National and Community Service/AmeriCorps.[1] Now before the Court is Defendant Chester Spellman's Motion to Dismiss (ECF No. 17), which has been fully briefed. The Court finds that the briefing adequately addresses the issues in contention and dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court GRANTS Defendant Chester Spellman's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    AmeriCorps and Hope Network Michigan Education Corps

The National and Community Service Act of 1990, 42 U.S.C. § 12501, *et seq.*, created the Corporation for National and Community Service (CNCS), an independent federal agency, to administer the programs established under the national service laws. 42 U.S.C. § 12651. CNCS, operating as AmeriCorps, funds organizations to make a positive impact in communities across the United States. *See* https://AmeriCorps.gov/about/what-we-do. The agency's State and National program provides grants to eligible organizations and the ability to recruit, train, and manage   individuals   to   serve   as   AmeriCorps   participants.   *See*

---

[1] Defendant explains in its motion to dismiss that Chester Spellman had served as the Director of the Corporation for National and Community Service AmeriCorps State and National Program, but that Sonali Nijhawan is the current Director of the AmeriCorps State and National Program.

https://www.nationalservice.gov/build-your-capacity/grants/ASNgrants.        A

participating volunteer is assigned to an approved organization and receives as

compensation not a traditional salary or wages, but instead a living allowance and

educational, healthcare, and child care benefits. *See* 45 C.F.R. §§ 2522.240-.250.

Defendant Hope Network West Michigan is a private, non-profit organization

which does business as the Michigan Education Corps (MEC). (ECF No. 1,

Plaintiff's Complaint (Compl.) ¶¶ 5, 14, PageID.2-4.) MEC was granted funding by

AmeriCorps to implement the Minnesota Reading Corps program in Michigan

schools by, in relevant part, identifying literacy tutors to be placed in preschool and

elementary school sites where they would serve during the school year. (*Id.* ¶¶ 16,

19, PageID.4-5.) MEC provided literacy tutors for the Flint Community School

District (FCSD) for the 2016-2017 and 2017-2018 school years. (*Id.* ¶ 19.)

### B.    Plaintiff's Service as an Elementary Literacy Tutor

Plaintiff Sovereign O'Dell responded to an advertisement by MEC on

Indeed.com for K-3 tutor positions for the 2016-2017 school year in the FCSD, and

she was subsequently offered a position by Thomas Bobo, on behalf of MEC, as an

Elementary Literacy Tutor (ELT). (Compl. ¶¶ 19-20, 23, PageID.5-6.) Plaintiff

accepted a contract on behalf of MEC to serve as a literacy tutor for the 2016-2017

school year in the FCSD, and was assigned to Potter Elementary, a school within the

3

FCSD. (*Id.* ¶¶ 23-24.) During this time period, Plaintiff alleges that she was treated unlawfully and unfairly by Holly Selesky, who Plaintiff describes as an AmeriCorps volunteer serving in the capacity of Internal Coach to the K-3 AmeriCorps member tutors. (*Id.* ¶¶ 24, 28-41, 45-57, 71, 79, PageID.6-19, 21, 23.)[2]

Plaintiff alleges that her contract at Potter Elementary was terminated on November 4, 2016 because of Selesky's unlawful, discriminatory actions. (Compl. ¶ 56, PageID.19.) Plaintiff further alleges that because of "material misrepresentations" made by Selesky about Plaintiff, Plaintiff was precluded from working at any school within the FCSD, in surrounding counties, or in any other AmeriCorps program. (*Id.* ¶ 57, PageID.19.) Finally, Plaintiff alleges that on May 24, 2019, she was informed that she was not selected for an ELT position "due to an email she allegedly sent on January 10, 2017." (*Id.* ¶ 58, PageID.19.)

---

[2] Defendant MEC states that Selesky was a FCSD employee (ECF No. 7, Defendant MEC's Motion to Dismiss at p. 3, PageID.48), and the Member Agreement attached as Exhibit B to Plaintiff's Response to the pending motion lists Selesky as the "Site Supervisor." (ECF No. 21-2, Member Agreement, PageID.518.) Holly Selesky is listed on Linkedin.com as a "Reading Intervention Teacher in Flint Community Schools" since August 1994. https://www.linkedin.com/in/holly-selesky-0922ab40.

### C.    Plaintiff's Prior Related Litigation

Plaintiff previously filed two lawsuits in state court related to her employment as an ELT in the FCSD during the 2016/2017 school year, prior to the filing of this action.

### 1.    2016 Genesee County District Court Litigation – Removed to this Court and Then Remanded

Plaintiff, proceeding pro se, first initiated litigation against Holly Selesky on November 10, 2016, in a fourteen-count Complaint filed in Genesee County District Court (Case No. G16-G7285-GC), alleging both state and federal law claims, including claims for discrimination under Title VII of the Civil Rights Act (Title VII), the Americans with Disabilities Act (ADA), and the Michigan Elliott-Larsen Civil Rights Act (ELCRA), as well as constitutional law claims and state law tort claims. On December 16, 2016, Selesky removed that litigation to this Court based on federal question jurisdiction. (*O'Dell v. Selesky*, Case No. 16-14378 (E.D. Mich.) (Borman, J.), ECF No. 1, Notice of Removal.) Plaintiff's 2016 complaint in that case is based on the same facts and circumstances as the Complaint in this case. (Compare ECF No. 1 with Case No. 16-14378, ECF No. 1-1, Complaint.) In both complaints, Plaintiff alleges that Selesky engaged in unlawful conduct stemming from Plaintiff's employment as an ELT, where she was placed by MEC in the FCSD. (See generally ECF No. 1, and Case No. 16-14378, ECF No. 1-1, Complaint.)

After the case was removed to federal court, Plaintiff withdrew her federal law claims, and on September 7, 2017, this Court remanded the litigation to the Genesee County District Court to resolve Plaintiff's state law claims. (Case No. 16-14378, ECF Nos. 28 - 31.) After over three years of litigation, Selesky and Plaintiff, by that time represented by counsel (the same counsel who represented Plaintiff in this current litigation),[3] reached a settlement. Plaintiff, her counsel, and counsel for defendant executed a settlement agreement and release, entered into a voluntary stipulation to dismiss Plaintiff's complaint, and the dismissal was entered by the Genesee County District Court on November 21, 2019. (ECF No. 7-2, Settlement Agreement and Release, PageID.66-68; ECF No. 7-5, Genesee County District Court docket report, PageID.143.)

## 2.    2019 Genesee County District Court Litigation

Less than one month later, on December 18, 2019, Plaintiff filed a second lawsuit against Selesky. (ECF No. 7-6, Case No. C19-8844-GD, Complaint.) Plaintiff complained that Selesky failed to timely tender payment of the settlement amount as agreed, and alleged three counts: breach of contract, fraudulent

---

[3] According to Plaintiff's second state court complaint in Case No. C19-8844-GD, although Plaintiff initially proceeded pro se in this first litigation, she "became represented by counsel [Mr. Burg]" in that litigation "on February 19, 2019." (ECF No. 7-6, Complaint ¶ 8, PageID.147.)

inducement, and fraud through misrepresentation. (*Id.*) Plaintiff attached, as an exhibit to her complaint, a section of the Settlement Agreement and Release which she was seeking to enforce. (*Id.*) That Settlement Agreement and Release provides, in pertinent part:

> I, the undersigned, Sovereign O'dell [sic], for myself, my heirs, administrators, executors successors and assigns, for and in consideration of the payment of the sum of Ten Thousand and no/100 Dollars ($10,000), the receipt of which is hereby acknowledged, do hereby RELEASE AND FOREVER discharge Holly Selesky, her heirs, administrators, executors, successors, assigns, and insurers and indemnitors, and Flint Community Schools, as well as its subsidiaries, employees and agents, and its insurers and indemnitors, hereinafter sometimes referred to as the Released Parties, and without exception, except as herein excluded, of and from any and all claims, demands, rights or causes of action whatsoever kind or nature, arising out of my hiring, treatment, termination or any interaction in any way concerning my service as an Elementary Literacy Tutor for the 2016/2017 school year at Potter Elementary School of Flint Community Schools, which I have ever had or may now have or may hereafter have, whether now known or unknown, foreseen or unforeseen, arising from or by reason of or in any way connected with any and all claims of discrimination of any type, along with any and all injuries, losses damages, disability, expenses, suffering or the result thereof, which heretofore has been or hereafter may be sustained by me.

(ECF No. 7-6, capitalization in original.)

Selesky filed a Motion for Summary Disposition in that case, arguing that the complaint should be dismissed, at least in part, given the integrated Settlement Agreement and Release signed by Plaintiff that was not conditioned upon receipt of the settlement check within 14 days. Selesky attached a complete copy of the parties'

Settlement Agreement and Release as an exhibit to that motion. (ECF No. 7-7, PageID.166-68.) The Genesee County District Court heard oral argument, and on February 21, 2020, granted Selesky's Motion for Summary Disposition "for the reasons set forth on the record." (ECF No. 7-8, 2/21/20 Order in Case No. C19G-8844-GC.)

### D.    Plaintiff's Complaint

Less than three months later, on May 12, 2020, Plaintiff filed her Complaint in this action against Defendants MEC and Chester Spellman, Director of Corporation for National and Community Service/AmeriCorps.[4] (ECF No. 1, Compl.) Plaintiff alleges the following claims against both defendants:

- Count I: Violation of Title VII, Race and Color Discrimination (Compl. ¶¶ 59-66, PageID.20-21);

- Count II: Violation of the ADA (Compl. ¶¶ 67-76, PageID.21-22);

- Count III: Violation of the ELCRA, Hostile Work Environment and Discharge (Compl. ¶¶ 77-84, PageID.22-24);

---

[4] A summons was issued for Defendant Spellman on May 26, 2020 (ECF No. 5), but it is not clear whether he has been served in this case. Defendant Spellman states in his Motion to Dismiss that he has not been served, and that he does not waive any objections based upon insufficient notice. (ECF No. 17, Def.'s Mot. at p. 1, fn. 2, PageID.448.) Plaintiff contends in her Response that she did serve Spellman, pointing to USPS tracking information (ECF No. 21-5), although she concedes that she did not receive the "green card" the sender receives after service of certified mail. (ECF No. 21, Pl.'s Resp. at p. 8, fn. 1, PageID.504.)

- Count IV: Violation of the Michigan Persons with Disabilities Civil Rights Act (PWDCRA) (Compl. ¶¶ 85-91, PageID.24-25);

- Count V: Retaliation for Opposing Violations of Title VII (Compl. ¶¶ 92-95, PageID.25-26);

- Count VI: Retaliation for Opposing Violations of the ELCRA (Compl. ¶¶ 96-99, PageID.26); and

- Count VII: Retaliation for Opposing Violations of the ADA (Compl. ¶¶ 100-03, PageID.27).

### E.  January 29, 2021 Opinion and Order Granting in Part Defendant MEC's Motion to Dismiss (ECF No. 12)

Defendant MEC filed a Motion for Partial Dismissal of Plaintiff's Complaint. (ECF No. 7.) Defendant MEC argued that Plaintiff's claims against it in Counts I-IV are barred by the November 21, 2019 Settlement Agreement and Release because MEC was FCSD's agent for the purpose of placing ELTs, including Plaintiff, within the District, and thus it is included in the "Released Parties." Plaintiff did not file a response opposing the motion.

On January 29, 2021, the Court entered its Opinion and Order Granting in Part and Denying in Part Defendant MEC's Motion for Partial Dismissal of Plaintiff's Complaint. (ECF No. 12, Opinion & Order.) The Court denied Defendant MEC's motion in part as to Count I, but only to the extent that Count is based on conduct relating to the alleged decision "to deny Plaintiff a position in 2019." The Court otherwise granted Defendant MEC's motion and dismissed Plaintiff's claims against

9

MEC in Count I based on alleged conduct relating to the 2016/2017 school year, and Plaintiff's claims against Defendant MEC in Counts II, III and IV, as barred by Plaintiff's prior Settlement Agreement and Release.

Defendant MEC filed Answers to Plaintiff's Complaint. (ECF Nos. 9, 13.)

### F.      Defendant Chester Spellman's Motion to Dismiss (ECF No. 17)

Defendant Chester Spellman, in his official capacity as the Director of the Corporation for National and Community Service AmeriCorps State and National Program, filed a Motion to Dismiss seeking dismissal of all claims against him pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (ECF No. 17, Def.'s Mot.) Defendant Spellman asserts that he is protected from Plaintiff's claims by sovereign immunity. He states that Plaintiff was never a federal employee or applicant of CNCS, and thus she cannot establish a waiver of "sovereign" immunity or state a claim under Title VII of the Civil Rights Act of 1964. Defendant Spellman further asserts that the ADA does not apply to a government corporation like CNCS, and that Plaintiff cannot establish a waiver of sovereign immunity with respect to her state law claims under the Michigan ELCRA and PWDCRA, and thus the Court lacks jurisdiction over those state law claims.

Plaintiff filed a Response to Defendant Spellman's Motion to Dismiss. (ECF No. 21, Pl.'s Resp.)[5] Plaintiff argues that Defendant Spellman should be subject to Title VII because his agency had a sufficient relationship with Plaintiff. Plaintiff requests that she be allowed to amend her complaint if the Court deems her pleadings insufficient to state the control relationship/employer-employee relationship for purposes of Title VII. Plaintiff concedes, however, that her claims against Defendant Spellman under the ADA and state law in Counts II, III and IV should be dismissed.

Defendant Spellman filed a Reply brief in support of his motion, asserting that, based on Plaintiff's concessions, the only remaining issue is whether Plaintiff was an "employee" under Title VII. (ECF No. 22, Def.'s Reply.) Defendant argues that Plaintiff has failed to allege facts showing that CNCS had any right to control the manner and means of her service as a literacy tutor with MEC, and that Plaintiff has failed to even address the federal law Defendant discusses in its motion that confirms that AmeriCorps participants are not "employees" under Title VII.

---

[5] Plaintiff's April 2, 2021 Response brief was filed by her former attorney, Jeffrey Burg. On August 19, 2021, the Court (Magistrate Judge David R. Grand) issued an order granting both Plaintiff O'Dell's and Burg's motions for Burg to withdraw as Plaintiff's counsel in this matter (ECF No. 40). Plaintiff is now proceeding pro se. The Court has considered the Response brief.

## II.  LEGAL STANDARDS

### A.        Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits dismissal for "lack of jurisdiction over the subject matter." Subject-matter jurisdiction is always a "threshold determination," *American Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007), and "may be raised at any stage in the proceedings." *Schultz v. General R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008). The plaintiff has the burden of proving subject matter jurisdiction. *Michigan S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002). Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack on the subject-matter jurisdiction alleged in the complaint questions the sufficiency of the pleading. *Id*. When reviewing a facial attack, a court must take the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). If those allegations establish federal claims, jurisdiction exists. *Id.* In contrast, when a motion raises a factual attack, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself

12

as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### B.    Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*,

13

829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted);

14

*Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co*., 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

### III.  ANALYSIS

**A.      Sovereign Immunity**

It is axiomatic that the United States enjoys sovereign immunity from suit unless Congress has explicitly waived its immunity. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "By extension, sovereign immunity also protects the officers and agents of the United States from suit in their official capacities." *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007) (citing *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 115-16 (6th Cir. 1988) ("[T]he bar of sovereign immunity cannot be avoided simply by naming officers and employees of the United States as defendants.")).

"Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity ... together with a claim falling within the terms of the waiver. The terms of consent to be sued may not be inferred, but must be unequivocally expressed." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (internal quotation marks and citations omitted). *See also McGinness v. United States*, 90 F.3d 143, 145 (6th Cir. 1996) (holding that "[t]he United States, as a sovereign, cannot be sued for damages without its prior

consent, and the terms of its consent define the court's subject matter jurisdiction."). Without a waiver, a federal court lacks the authority to hear a case because it lacks subject matter jurisdiction. *See Lockett v. Marsh USA, Inc.*, 354 F. App'x 984, 987 (6th Cir. 2009) (citations omitted). Plaintiff bears the burden to "identify a waiver of sovereign immunity in order to proceed." *Toledo v. Jackson*, 485 F.3d 836, 838 (6th Cir. 2007) (quoting *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000)). "If [Plaintiff] cannot identify a waiver, the claim must be dismissed on jurisdictional grounds." *Reetz*, 224 F.3d at 795.

Defendant Spellman argues that he is protected by sovereign immunity, and that Plaintiff cannot establish a waiver of sovereign immunity for any of her claims against him.

## B.   Plaintiff's Title VII Claims (Counts I, V)

"Congress has waived sovereign immunity for discrimination actions brought against the federal government[]" through Title VII, and that law is considered the "exclusive judicial remedy for claims of discrimination in federal employment." *Taylor v. Geithner*, 703 F.3d 328, 333 (6th Cir. 2013) (citations omitted); *see* 42 U.S.C. § 2000e-16. However, this waiver is limited to "personnel actions affecting employees or applicants for employment" in executive agencies. 42 U.S.C. § 2000e-16(a); *see United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992) (noting that

17

where Congress has provided a specific statutory waiver of sovereign immunity, the waiver "must be construed strictly in favor of the sovereign, … and not enlarge[d] … beyond what the language requires.") (internal citations and quotation marks omitted, bracket in original).

Defendant Spellman argues that Plaintiff was not a federal "employee" of CNCS or an "applicant" for federal employment with CNCS under Title VII, and that she therefore has both failed to establish a waiver of sovereign immunity and to state a claim for employment discrimination under Title VII. (Def.'s Mot. at pp. 5-8, PageID.452-55.) Whether an individual is an "employee" for purposes of Title VII is a preliminary matter that, "[i]n the absence of a conflict of material fact," can be decided by the court as a matter of law. *Simpson v. Ernst & Young*, 100 F.3d 436, 439 (6th Cir. 1996); *see also Weary v. Cochran*, 377 F.3d 522, 524 (6th Cir. 2004). Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Because this definition "is completely circular and explains nothing," the Supreme Court has instructed courts to interpret the term by incorporating the common law of agency. *Bowers v. Ophthalmology Grp. LLP*, 648 F. App'x 573, 578 (6th Cir. 2016) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)); *see also Marie v. Am. Red Cross*, 711 F.3d 344, 352 (6th Cir. 2014). Toward that end, the Supreme Court has stated:

18

> In determining whether a hired party is an employee under the general common law of agency, we consider [1] the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are [2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; [13] and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323-24 (citations omitted). "The crux of *Darden's* common law agency test is 'the hiring party's right to control the manner and means by which the product is accomplished.'" *Weary*, 377 F.3d at 525 (quoting *Darden*, 503 U.S. at 323); *see also Marie*, 771 F.3d at 356 ("[T]his Court has repeatedly held that the employer's ability to control job performance and the employment opportunities of the aggrieved individual are the most important of the many factors to be considered.") (citations and internal quotation marks omitted).

### 1. Plaintiff's Complaint

Defendant Spellman argues that Plaintiff fails to allege any facts in her Complaint showing that she was an employee of CNCS. (Def.'s Mot. at pp. 6-7, PageID.453-54, citing Compl.) In her Complaint, Plaintiff alleges that she responded to an advertisement by Defendant MEC for K-3 tutor positions in the FCSD, and

19

that she was offered and accepted a position to serve as an AmeriCorps member on behalf of MEC. (Compl. ¶¶ 19-20, 23, PageID.5-6.) She complains of allegedly discriminatory acts committed by agents of Defendant MEC – namely Holly Selesky, who Plaintiff alleges "was directly under the supervision and control of Defendant [MEC]'s employees[.]" (*Id.* ¶¶ 25, 34-37, PageID.7, 9-14.) Plaintiff fails to meaningfully address Spellman's allegations in her Response.

With respect to Defendant Spellman's agency, CNCS/AmeriCorps, Plaintiff's Complaint alleges only that Defendant MEC applied for and was awarded funding by CNCS to implement the Minnesota Reading Corps program in Michigan schools, and as a result "all members (Plaintiff and Bridget DePottey), volunteers (Holly Selesky), the grantee (Defendant [MEC]), and sub-grantee ([FCSD]) must have agreed to follow all AmeriCorps policy and procedure[.]" (*Id.* ¶¶ 16, 18, PageID.4-5.) However, Plaintiff does not allege in her Complaint that she was employed by CNCS or that CNCS had any control over the manner or means of her work as a literacy tutor. Plaintiff's conclusory allegation that she "was an employee for purposes of Title VII, and Defendants were her employer for purposes of Title VII" (Compl. ¶ 60, PageID.20), is not sufficient to survive dismissal. *See Handy-Clay*, 695 F.3d at 539 ("We need not accept as true 'a legal conclusion couched as a factual allegation[.]'") (quoting *Twombly*, 550 U.S. at 555).

20

In her Response brief, Plaintiff instead points to other allegations in the Complaint that refer to alleged requirements to follow, or alleged violations of, "official AmeriCorps policy." (Pl.'s Resp. at p. 11, PageID.507.) However, as Defendant Spellman explains in his Reply brief, the fact that Defendant MEC's program was funded under a federal grant through AmeriCorps, and that Plaintiff was subject to certain requirements by virtue of her status as an AmeriCorps participant, does not render Plaintiff an employees of CNCS. When CNCS makes grants, it attaches terms and conditions to that funding, and grantees such as Defendant MEC are subject to federal regulations and must impose requirements on AmeriCorps participants, such as Plaintiff, as a condition of receiving that funding. *See, e.g.,* 45 C.F.R. §§ 2520 (General Provisions: AmeriCorps Subtitle C Programs), 2522 (AmeriCorps Participants, Programs, and Applicants). If a grantee does not comply with these rules, the grant may be terminated. 45 C.F.R. 2540.400. Those regulations provide that Defendant MEC, not CNCS, was responsible for selecting Plaintiff as an AmeriCorps participant and supervising her participation in the program. *See* 45 C.F.R. §§ 2522.210 ("In general, AmeriCorps participants will be selected locally by an approved AmeriCorps program …."), 2522.230 ("An AmeriCorps program may release a participant from completing a term of service

21

for compelling personal circumstances, as determined by the program, or for cause.").

Thus, the Court finds that Plaintiff's Complaint fails to sufficiently allege that Plaintiff was an "employee" or applicant for employment with CNCS for purposes of Title VII.

### 2.    Offer Letter and Member Agreement

Plaintiff also contends that her offer letter from Defendant MEC and the Member Agreement she signed with MEC in August 2016 establish the requisite control by CNCS. (Pl.'s Resp. at pp. 9-10, PageID.505-06, referring to Exs. B and D, ECF Nos. 21-2, 21-4.)[6] These documents fail to support Plaintiff's argument that she was an employee of CNCS. The offer letter came directly from Defendant MEC, is signed by MEC's Program Director, Thomas Bobo, thanks Plaintiff for "interviewing with the Michigan Education Corps staff," offers Plaintiff "a position

---

[6] While neither the offer letter nor the Member Agreement were attached as exhibits to Plaintiff's Complaint, the Court finds that these documents were referred to in the Complaint. (See Compl. ¶ 23 ("Plaintiff was offered by and accepted from Thomas Bobo ("Bobo"), on behalf of Defendant Hope Network, a contract to serve as an AmeriCorps member in the capacity of K-3 Literacy Tutor with performance dates extending continuously from August 22, 2016 through June 15, 2017.").) The Court thus may consider these documents on this motion to dismiss, without converting it to a motion for summary judgment. *See Greenberg*, 177 F.3d at 514 (explaining that a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings when document is referred to in the complaint and is central to the plaintiff's claim).

as a full-time K3 literacy tutor serving in an elementary school in Flint, MI," and states that the offer is "contingent on the successful completion of a background check and the approval of AmeriCorps funding." (ECF No. 21-4, Offer Letter, PageID.544.) The letter does not say anything about the right of CNCS to control Plaintiff's service with Defendant MEC.

The Member Agreement Plaintiff signed when she accepted her position with Defendant MEC similarly fails to establish Plaintiff as an employee of CNCS. That Member Agreement establishes Plaintiff's service position with Defendant MEC and "delineates the terms, conditions, and rules of membership of [Plaintiff] … in the AmeriCorps program, Michigan Education Corps (MEC), during the 2016-17 program year." (ECF No. 21-2, Member Agreement, PageID.518.) That Agreement reserved to Defendant MEC "the right to change the member's service site due to circumstances beyond the program's control[,]" and provides that MEC "reserves the right to change, suspend, or eliminate any or all matters contained in this contract without prior notice or consent" and "retains the sole discretion to interpret the terms and conditions of the handbook and contract and to depart from these terms and conditions or any other Education Corps policies, rules, or procedures if Education Corps determined such action is appropriate." (*Id.* PageID.518, 532.) Like the offer

letter, the Member Agreement does not state that Plaintiff is an employee of CNCS or that CNCS has any control over her service.

### 3.   Plaintiff's Participation in Administrative Complaint Process

Plaintiff also suggests that her ability to file a complaint of discrimination with CNCS permits her to bring an employment discrimination claim against the agency. (Pl.'s Resp. at pp. 7, 11, PageID.503, 07.) That argument fails. As Defendant explains, one of the conditions attached to AmeriCorps grants is that programs cannot discriminate against participants based on race, color, national origin, sex, age, political affiliation, or disability, 42 U.S.C. § 12635(a); 45 C.F.R § 2540.210, and participants may file complaints of discrimination with CNCS relating to their "recruitment, selection, placement, service, or termination." *See* 45 C.F.R. § 1225.1, *et seq*.

Plaintiff availed herself of this administrative process by filing a complaint of discrimination against Defendant MEC with CNCS. (ECF No. 21-3, Recommended Final Agency Decision, PageID.536.) The agency investigated Plaintiff's complaint and found that "[t]he evidence of record does not support a finding that [Plaintiff] was subjected to unlawful discrimination *by MEC management*," and that she therefore was not entitled to any relief. (*Id.* PageID.541 (emphasis added).) The decision notified Plaintiff of her right to appeal that decision and/or to file a civil suit

regarding that decision in federal court. (*Id.* PageID.541-42.) Plaintiff's right to challenge the administrative decision in federal court does not equate to an independent right to bring a Title VII action, as an employee, against the agency. Indeed, the decision makes clear at the outset that "AmeriCorps members are not employees of either the Corporation or the organization in which they serve." (*Id.* PageID.535.) Thus, the Court finds that Plaintiff's participation in the statutorily-provided administrative complaint process does not render her an "employee" of CNCS under Title VII.

### 4. Federal law

Furthermore, federal law expressly provides that an AmeriCorps participant "shall not be considered to be an employee of the organization receiving assistance under the national service laws through which the participant is engaging in service." 42 U.S.C. § 12511(30)(B); *see also* 42 U.S.C. § 12655n(b)(1) ("Except as otherwise provided in this subsection, a participant or crew leader in a program that receives assistance under this subtitle [42 U.S.C. § 1255 *et seq.*] shall not be considered a Federal employee and shall not be subject to the provision of laws relating to Federal employment."). Defendant Spellman argues that if Plaintiff is not even considered an employee of Defendant MEC by virtue of federal law, then she certainly cannot be considered an employee of CNCS. (Def.'s Mot. at p. 8, PageID.455.) Indeed,

25

several federal courts have determined that AmeriCorps participants are not "employees" for purposes of Title VII claims. *See Self v. I Have a Dream Found.– Colorado*, 552 F. App'x 782, 785 (10th Cir. 2013) ("Under federal law, AmeriCorps participants are not considered 'employees' of the Foundation"); *Twombly v. Ass'n of Farmworker Opportunity Programs*, 212 F.3d 80, 84 (1st Cir. 2000) ("Since 1991, the [National Community Service Act] has provided that participants in an approved AmeriCorps program ... 'shall not be considered employees of the program.'"); *Moise v. Miami-Dade Cnty.*, No. 17-20993-CIV, 2018 WL 4445111, at *7 (S.D. Fla. Aug. 22, 2018) ("The Service Act provides that an AmeriCorps participant "shall not be considered a Federal employee and shall not be subject to the provisions of law relating to Federal employment." 42 U.S.C. § 12655n(b)(1). The Service Act further provides that "[a] participant shall not be considered to be an employee of the organization receiving assistance under the national service laws through which the participant is engaging in service." 42 U.S.C. § 12511(30)(B). As such, the relevant case law establishes that AmeriCorps host organizations are not liable to AmeriCorps participants under federal wage and hour or employment discrimination laws."); *Rodriguez v. Corp. for Nat'l & Cmty. Serv.,* No. EP–09–CA–041–FM, 2009 U.S. Dist. LEXIS 67534, at *12-13 (W.D. Tx. June 23, 2009) (agreeing that an AmeriCorps participant was not an employee for purposes of Title VII employment

26

discrimination claims); *Murray v. American Red Cross,* Case No. 4:07cv161–RH/WCS, 2008 WL 11460707, at *1-3 (N.D. Fla. Jan. 1, 2008) ("In sum, there is no sufficient ground to depart from the plain meaning of the AmeriCorps statute, under which Ms. Murray was an 'employee' of neither the federal government nor the Chapter. She was, in short, not an 'employee' at all.").[7]

Plaintiff fails to address this case law in her Response, and fails to explain how she can be considered an employee of CNCS when she is not even considered an employee of Defendant MEC under federal law.

The Court finds, consistent with the case law discussed above, that because Plaintiff is not an "employee" of CNCS, she fails to establish a waiver of sovereign immunity and fails to state a claim for employment discrimination under Title VII, and therefore Plaintiff's claims against Defendant Spellman in Counts I and V of her Complaint are dismissed.

The Court further denies Plaintiff's request in a single sentence in her Response brief that she be allowed to "amend the complaint to more thoroughly plead the control factors and the employment relationship." (Pl.'s Resp. at p. 11,

---

[7] The *Murray* court recognized two narrow statutory exceptions for some AmeriCorps participants deemed federal employees for purposes of federal workers compensation, *see* 42 U.S.C. § 12655n(b)(2), and the Federal Tort Claims Act, 42 U.S.C. § 12655n(b)(3). *See Murray*, 2008 WL 11460707, at *2. Neither exception is applicable in this case.

PageID.507.) Plaintiff's request is not presented in a proper motion and she did not attach a proposed amended complaint. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("Both because the plaintiffs did not present an adequate motion and because they did not attach a copy of their amended complaint, the district court did not abuse its discretion in refusing to allow the plaintiffs to amend their complaint based on the final sentence of the plaintiffs' memorandum in opposition."). Further, any amendment would be futile. *See* Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff, as an AmeriCorps participant, was not an employee of CNCS for purposes of Title VII, and no amendment could cure that fact.

## C.   Plaintiff's ADA Claims (Counts II and VII)

Defendant Spellman argues that the Court lacks jurisdiction over Plaintiff's claims for violations of the ADA because the ADA does not apply to a government corporation like CNCS. (Def.'s Mot. at pp. 9-10, PageID.456-57.) As Defendant explains, the ADA expressly excludes the United States and its wholly owned corporations from the definition of "employer," 42 U.S.C. § 12111(5)(B), and Congress has not waived the Federal Government's sovereign immunity with regard to ADA claims. *See Agee v. U.S.*, 72 Fed. Cl. 284 (2006); *Fox v. U.S. Postal Serv.*, No. 18-10901, 2018 WL 6843372, at *7 (E.D. Mich. Oct. 13, 2018) (same), *report*

*and recommendation adopted by* 2019 WL 1034221 (E.D. Mich. Mar. 5, 2019), *aff'd*, 2019 WL 8619622 (6th Cir. Oct. 30, 2019).

In her Response, Plaintiff concedes that her ADA claims should be dismissed. (Pl.'s Resp. at p. 12, PageID.508.)[8]

Accordingly, the Court dismisses Plaintiff's ADA claims against Defendant Spellman in Counts II and VII of Plaintiff's Complaint.

### D.    Plaintiff's State Law Claims (Counts III, IV and VI)

Defendant Spellman argues that the Court lacks jurisdiction over Plaintiff's state law claims under the Michigan ELCRA and PWDCRA because Congress has not waived the federal government's sovereign immunity with respect to these state statutes. (Def.'s Mot. at p. 10, PageID.457.) *See Scott v. Inter-Con Sec. Sys., Inc.*, No. 19-12655, 2020 WL 4437537, at *4 (E.D. Mich. Aug. 3, 2020) (holding plaintiff's state law claims against federal employees in their official capacities are

---

[8] Plaintiff at the same time contends that some authority may support her ADA claim against Defendant Spellman, citing *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002) ("Section 202 of the ADA prohibits discrimination against the disabled by public entities."). However, like the Civil Rights Act, Title II of the ADA – which prohibits disability discrimination in public programs and services – is applicable only to state and local governments, not the federal government. *See* 42 U.S.C. § 12131(1)(B) ("The term 'public entity' means ... any State or local government" or "any department, agency, special purpose district, or other instrumentality" thereof); *see also Cellular Phone Taskforce v. FCC*, 217 F.3d 72, 73 (2d Cir. 2000) (noting that "Title II of the ADA is not applicable to the federal government").

barred by sovereign immunity because those claims are preempted by Title VII, the "exclusive judicial remedy for claims of discrimination in federal employment.") (citations omitted).

Plaintiff concedes that these state law claims against Defendant Spellman should be dismissed. (Pl.'s Resp. at p. 12, PageID.508.)

The Court therefore dismisses Plaintiff's state law claims against Defendant Spellman in Counts III, IV and VI of Plaintiff's Complaint.

## IV.  CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant Chester Spellman's Motion to Dismiss (ECF No. 17) and dismisses all claims against Defendant Spellman with prejudice for lack of subject matter jurisdiction.

This Opinion and Order does not resolve all pending claims and does not close this case.

IT IS SO ORDERED.

Dated: August 30, 2021

s/Paul D. Borman
Paul D. Borman
United States District Judge

30